AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia

FILED
SEP 28 2017
CLERK, U.S. DISTRICT COURT

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
A black iPhone 7 in a clear case, serial number ) Case No. 2:17-sw- 165
F19T1LSVHG71, seized from James Crouch on )
September 21, 2017 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
A black iPhone 7 in a clear case with a Clemson paw and a sticker affixed to it bearing the name Jim Crouch, serial number F19T1LSVHG71, seized from James Crouch on September 21, 2017

located in the             Eastern             District of             Virginia             , there is now concealed *(identify the person or describe the property to be seized)*:
Text messages, contacts, call logs, photographs, videos, notes, banking applications, communication applications and other means of communication, recordings, and financial information retention connected to prescription fraud.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 843(a)(3) | Prescription fraud |
| 21 U.S.C. § 843(a)(2) | Use of another's registration number |

The application is based on these facts:
Please see the attached affidavit.

☐ Continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: ___ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA/SAUSA:

Kevin Hudson

*Applicant's signature*

TFO Dallas Greeson, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/28/17

*Judge's signature*

City and state: Norfolk, Virginia             Douglas E. Miller, U.S. Magistrate Judge
*Printed name and title*

**REDACTED COPY**



IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A BLACK IPHONE 7 IN A CLEAR CASE BEARING THE NAME JIM CROUCH SEIZED ON SEPTEMBER 21, 2017 IN FRANKLIN, VIRGINIA; and | Case No. 2:17-sw-164 |
| IN THE MATTER OF THE SEARCH OF A SILVER IPHONE 6 IN A CASE BEARING THE NAME JIM CROUCH SEIZED ON SEPTEMBER 21, 2017 IN FRANKLIN, VIRGINIA. | Case No. 2:17-sw-165 |

### AFFIDAVIT IN SUPPORT OF SEARCH WARRANTS

I, Dallas A. Greeson, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Task Force Officer with the Drug Enforcement Administration ("DEA") of the United States Department of Justice and am currently assigned to the Richmond Tactical Diversion Squad- Norfolk Extension in Norfolk, Virginia. In addition, I have been employed as a detective with the Norfolk Police Department, Vice and Narcotic Division, Special Investigation Section, for approximately 10 years. Prior to my employment with the Norfolk Police Department, I was employed by the Chesterfield County, South Carolina Sherriff's Department for approximately 1 year. During my law enforcement career, I have received specialized training regarding the activities of narcotics traffickers, including the methods used to package, store, and distribute narcotics, and the methods used by narcotics traffickers to conceal and launder the proceeds of their narcotics trafficking activities.

2. In addition to my training, I have had extensive experience in the investigation of the activities of narcotics traffickers. Since being deputized by the DEA, I have participated in narcotics investigations as a task force officer and in a subsidiary role. I have debriefed more

than 30 defendants, informants, and witnesses who had personal knowledge about narcotics trafficking activities and the operation of narcotics trafficking organizations. I personally have participated in all aspects of narcotics trafficking investigations, including conducting surveillance, using confidential informants, acting in an undercover capacity, and conducting court-authorized interceptions of wire and electronic communications. I have also participated in the preparation and/or execution of numerous search warrants and arrests.

3. With respect to my employment with the Norfolk Police Department, I have been a Police Officer for 10 years and have been assigned to the Narcotics Division for approximately 5 years. I have attended the Norfolk Police Department Drug Identification course taught by the Norfolk Police Academy, the Search Warrant Process taught by the Virginia Center for Policing Innovation, Multijurisdictional Counterdrug Task Force Training, Domestic Drug Interdiction taught by CPSI, Current Drug Trends taught by CPSI, Courtroom Expert taught by CPSI, Narcotics Conspiracy taught by the Federal Bureau of Investigation, Basic Narcotics Investigation and Mid-Level Narcotics Investigation School taught by the DEA. I have conducted and assisted in at least 200 successful investigations of illegal narcotics, which includes both possession and distribution. These investigations have resulted in the recovery of cocaine, heroin, marijuana, MDMA, prescription drugs to include Adderall, Oxycodone, Promethazine with Codeine, Suboxone, Tramadol, Amphetamine & Dextroamphetamine, illegal firearms and other contraband. These investigations have resulted in the successful prosecution of numerous criminal offenders. I have been certified as an expert in the use, packaging, and distribution of illegal narcotics in Norfolk General District Court.

4. This affidavit is based upon information I have gained from my investigation, my training and experience, as well as information from other law enforcement officers.

Since this affidavit is being submitted for the limited purpose of securing two search warrants for the devices described in paragraph 5 below, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause that evidence and instrumentalities of the offenses described in paragraphs 6 and 7 below will be found on the devices described in paragraph 5 below.

## DEVICES TO BE SEARCHED

5. The devices to be searched are as follows: (1) a black iPhone 7 in a clear case with a Clemson paw and a sticker affixed to it bearing the name Jim Crouch, phone serial number F19T1LSVHG71, which iPhone was seized from a silver BMW 3-series registered James Crouch in the City of Franklin on September 21, 2017; and (2) a silver iPhone 6 in a gold-tinted case bearing the name Jim Crouch, phone serial number DNRPHE29G5MG, which iPhone was seized from a silver BMW 3-series registered James Crouch in the City of Franklin on September 21, 2017.

## LEGAL AUTHORITY

6. 21 U.S.C. § 843(a)(3) (prescription fraud) provides that it is unlawful for any person to knowingly or intentionally acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge.

7. 21 U.S.C. § 843(a)(2) (use of another's registration number) provides that it is unlawful for any person to knowingly or intentionally use for the purpose of acquiring or obtaining a controlled substance, a registration number which is issued to another person.

## BACKGROUND OF INVESTIGATION AND SUMMARY OF PROBABLE CAUSE

8. On September 18, 2017, I interviewed a cooperating witness ("CW") who stated that the CW had been receiving prescriptions for controlled substances by Doctor James CROUCH, MD. CROUCH is a physician licensed to practice in the Commonwealth of Virginia and who was, at the time, employed as an emergency room physician at Southside Memorial Hospital in Franklin, Virginia. According to the CW, on Saturday, September 16, 2017, CROUCH had given the CW numerous prescriptions, namely one for ninety 20-mg amphetamine pills, known by the retail name Adderall, a Schedule II controlled substance; one for sixty 500-mg Robaxin pills, a non-controlled substance; one for one Medrol Dosepak, a non-controlled substance. These prescriptions were written to the CW's name, but were written on the prescription pad of Dr. ███████, with DEA registration FS0504250, and the signature of Dr. ███ was forged by CROUCH. Officers found the aforementioned three prescriptions in the CW's possession and seized those prescriptions. The CW stated that the CW was never a patient of CROUCH's and was never examined by him.

9. In addition to the above three prescriptions, CROUCH also gave CW a prescription for ninety 20-mg amphetamine pills, known by the retail name Adderall, a Schedule II controlled substance, and one for ninety Sildenafil pills, known by the retail name Viagra, a non-controlled substance. Both of these prescriptions were written to Mark Cannon and were written on the prescription pad of Dr. ███████████, with DEA registration number BH6737033, and the signature of Dr. ████████ was forged by CROUCH. After inquiry by Franklin Police, Dr. ████████ indicates that he never authorized these prescriptions. According to the CW, CROUCH gave the CW the three prescriptions in the CW's name for the CW to fill and keep. In exchange for those three prescriptions, CROUCH provided the CW with the

4

prescriptions written to Mark Cannon and instructed the CW to fill them and return the pills to CROUCH. The CW explained to your affiant that CROUCH expected both prescriptions within the next few days.

10. The CW also explained to your affiant that the CW and CROUCH had been exchanging prescription pills for prescriptions in the manner described above for the past three months. CW stated that Crouch would prescribe controlled substances for the CW in exchange for sexual favors and a portion of the controlled substances be returned to Crouch for personal use. The CW indicated that CROUCH would oftentimes give the CW prescriptions for suboxone to retain and would further give the CW prescriptions for Adderall to fill and return to CROUCH. Suboxone is a schedule III controlled substance. The CW indicated that the CW and CROUCH were initially communicating via KIK, which is a smartphone application allowing users to exchange pictures and text over IP. After communicating on KIK for a period, CROUCH and the CW switched to text messaging because the CW wanted to delete the KIK application, given the amount of cellphone memory the application required.

11. The CW showed your affiant and other officers text messages between the CW's telephone and telephone number 757-███████.[1] For example, on September 20, 2017, the CW received a text message from 757-███████ that read, "I would like to get the add and my money today."[2] Later that day, the CW received another text message from 757-███████ that read, "Please don't sell my adds or give them to him."[3]

---

[1] These text messages were photographed.
[2] Based upon my training and experience and my involvement in this case, I believe that CROUCH was requesting the Adderall and the money used to fill other prescriptions from the CW.
[3] Based upon my training and experience and my involvement in this case, I believe that CROUCH was requesting that the CW not sell the Adderall or give them away. I further believe that CROUCH was worried about receiving the Adderall because the CW had been delayed delivering them due to law enforcement developing a plan.

12. On September 21, 2017, investigators obtained Adderall pills to satisfy the Adderall prescription written to Mark Cannon by CROUCH. Later that day, under the direction and surveillance of officers, the CW met with CROUCH in the parking lot of Southampton Memorial Hospital in Franklin, Virginia.[4] During that meeting, the CW gave CROUCH a pill bottle containing a quantity of Adderall pills and asked for another prescription for Adderall. CROUCH declined to write another prescription, claiming that doing so would raise a red flag.

13. CROUCH was then arrested when he entered his vehicle, a silver BMW 3-series coupe bearing VIN # BSBL93454PN56474. Found on him at the time of arrest was the pill bottle containing the Adderall given to him by the CW, as well as a cellular telephone. That cellular telephone was open at the time of its recovery. The phone was open to the text messages CROUCH had been exchanging with the CW. This cellular phone was recovered from Crouch's center console of the BMW and is described as a black iPhone 7, a clear case with a Clemson paw and a sticker bearing the defendant's name. The iPhone 7 has a serial number of F19T1LSVHG71. Also recovered from CROUCH's vehicle was an iphone 6, this one described as silver with a gold tinted case also bearing a sticker with the defendant's name. This iPhone 6 has as serial number of DNRPHE29G5MG.

14. After being advised of *Miranda* and waiving the same, CROUCH admitted to providing prescriptions for Adderall to the CW where CROUCH utilized the name and DEA registration of Dr. Henriquez and further, that some of the prescriptions were written in the CW's name and some in the names of others.[5] CROUCH also admitted to requesting and receiving Adderall back from the CW for prescriptions where he had utilized the name, DEA registration number, and forged signature of other physicians, including the Adderall that he received from

---

[4] This meeting was recorded.
[5] This interview was audio-recorded.

6

the CW earlier that day. CROUCH confirmed that the CW was never a patient of his and that he had never examined the CW.

15. At the time of his arrest, CROUCH voluntarily surrendered his DEA registrant's license. CROUCH was assigned DEA Registration number BC8280074.[6]

## CONCLUSION

16. Based on the facts set forth herein, I submit that probable cause exists to believe that James CROUCH committed the violations set forth in paragraphs 6 and 7 above. I further submit that the facts set forth herein establish probable cause that evidence and instrumentalities of those offenses will be found in within the devices set out in paragraph 5 above.

17. I submit that a search of the devices set out in paragraph 5 above could reveal others with whom CROUCH was engaged in the same type of criminal activity as described herein. The devices are also likely to reveal CROUCH's communications and other notes/records in furtherance of the prescription fraud scheme described herein. Photograph storing functions may help identify those with whom CROUCH was engaged in this criminal activity, as further evidence of prescription fraud. Financial applications may reveal payments for prescription drugs unlawfully obtained.

18. Accordingly, I request that warrants be issued authorizing an off-site search of the devices set forth in paragraph 5 above. The search described herein would be performed by DEA agents and task force officers, with assistance from other personnel as needed to carry out the search. I respectfully request that the searches of the two telephones described in paragraph

---

[6] A DEA registration number is a unique, identifying code that is given to a registrant by DEA, who is then authorized to handle controlled substances. A registrant may include a chemical company, a physician, a pharmacy, etc. Identifying numbers authorize registrants to handle a controlled substance in various ways, for e.g., the number may authorize a registrant to possess a controlled substance, to prescribe a controlled substance, or to dispense a controlled substance. In this case, CROUCH's DEA number authorized him to prescribe, administer, and dispense controlled substances in Schedules II through V.

7

5 include text messages, contacts, call logs, photographs, videos, notes, communication applications, other means of communication including but not limited to social media, recordings including but not limited to voicemails, financial applications and any application or function that could be used to track, place or otherwise keep record of prescriptions.

_____
Dallas A. Greeson
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me on this _____ day of September 2017

_____
Douglas E. Miller
UNITED STATES MAGISTRATE JUDGE

REVIEWED AND APPROVED:

_____
Kevin Hudson
Assistant United States Attorney

8